# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LARRY DEAN BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 13-cv-452-TLW |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Plaintiff Larry Dean Brown seeks judicial review of the decision of the Commissioner of the Social Security Administration denying his claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. (Dkt. 8). Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

## INTRODUCTION

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the

evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

**BACKGROUND**

Plaintiff, then a 32-year old male, applied for benefits under Titles II and XVI on September 24, 2009. (R. 142-50). Plaintiff alleged a disability onset date of June 9, 2009. (R. 142, 146). Plaintiff claimed that he was unable to work due to problems with his back and right knee, high blood pressure, "nerves," and "feet aches." (R. 164). Plaintiff's claims for benefits were denied initially on February 16, 2011, and on reconsideration on April 15, 2011. (R. 76-77, 80-81, 82-90, 92-97). Plaintiff then requested a hearing before an administrative law judge ("ALJ"), and the ALJ held the hearing on November 3, 2011. (R. 34-75). The ALJ issued a decision on March 2, 2012, denying benefits and finding plaintiff not disabled because he was able to perform other work. (R. 15-29). The Appeals Council denied review, and plaintiff appealed. (R. 1-4; Dkt. 2).

**The ALJ's Decision**

The ALJ found that plaintiff had not performed any substantial gainful activity since his alleged disability onset date of June 4, 2009. (R. 20). His last insured date was determined to be June 4, 2009.[1] Id. The ALJ found that plaintiff had the severe impairments of "thoracic disc displacement, obesity, bipolar disorder without agoraphobia, [and] history of alcohol dependence." Id. The ALJ found that plaintiff's high blood pressure and gastroesophageal reflux

---

[1] The Court notes that it is unusual for a date last insured to match the alleged onset date. Since this case is being remanded, the correct date last insured for purposes of Title II benefits may be important. The undersigned notes a "Certified Earnings Record" form showing "DLI: 12/14." (R. 151).

2

disease were non-severe impairments, and his alleged right knee problems, and feet and ankle problems were medically non-determinable. (R. 20-21). After analyzing the "paragraph B" criteria, the ALJ found that plaintiff experienced moderate restriction in activities of daily living, social functioning, and concentration, persistence, and pace; and no episodes of decompensation. (R. 22). Plaintiff's impairments did not meet or medically equal a listed impairment. Id.

After reviewing plaintiff's testimony, the medical evidence, and other evidence in the record, the ALJ concluded that plaintiff could perform:

> sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except with pushing/pulling no more than 10 pounds occasionally and 10 pounds frequently, could stand/walk for only 2 hours out of an 8-hour day but could only do so for 15 minutes at a time; could sit for 6 hours out of an 8-hour day; could occasionally climb stairs and ramps but could not climb ladders, ropes, or scaffolding; could occasionally balance, bend or stoop, kneel, crouch, crawl; should avoid hazards such as dangerous high-speed machinery, unprotected heights; limited to simple tasks and superficial contact with co-workers or supervisors; no public contact except for only incidental contact with the public.

(R. 23). The ALJ found that plaintiff's residual functional capacity did not allow him to return to his past relevant work as an auto body technician, heating and air helper, order picker, labeler, assistant manager, or fish farm laborer. (R. 26-27). At step five, the ALJ determined that sedentary jobs existed in significant numbers which plaintiff could perform, such as clerical mailer, optical goods assembler, and semiconductor assembler. (R. 28). Accordingly, the ALJ found that plaintiff was not disabled. (R. 28-29).

Plaintiff raises two issues on appeal. Of those two issues, the ALJ's credibility analysis requires remand.

## ANALYSIS

This Court is not to disturb an ALJ's credibility findings if they are supported by substantial evidence because "[c]redibility determinations are peculiarly the province of the

3

finder of fact." Cowan v. Astrue, 552 F.3d 1182, 1190 (10th Cir. 2008) (citing Diaz v. Secretary of Health & Human Svcs., 898 F.2d 774, 777 (10th Cir. 1990)). Credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Id. (citing Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted)). The ALJ may consider a number of factors in assessing a claimant's credibility, including "the levels of medication and their effectiveness, the extensiveness of the attempts . . . to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).

> The ALJ summarized his credibility analysis in the following paragraph:
>
>> Treatment notes in the record do not sustain the claimant's allegations of disabling pain and limitations. … The credibility of the claimant's allegations is weakened by his withholding information regarding his past alcohol dependence, his non-compliance with his treating doctor who recommends exercise, his rather conservative medical treatment, and the objective medical evidence overall. The claimant does experience some levels of pain and limitations but only to the extent described in the residual functional capacity above.

(R. 22). An illustrative list of factors for the ALJ to consider in assessing credibility is set forth in Luna v. Bowen, 834 F.2d 163-66 (10th Cir. 1987) and Huston, 838 F.2d at 1132 n. 7. Those factors include medication, attempts to seek treatment, daily activities, the consistency of the medical evidence and plaintiff's testimony, relationships and motivation of the witnesses, and other subjective factors within the ALJ's discretion. See Huston, 838 F.2d at 1132 n. 7. The ALJ must link his credibility findings to the evidence. See Kepler, 68 F.3d at 291. However, the ALJ is not required to conduct a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2004).

Here the ALJ appears to focus his credibility determination on his own assumptions rather than objective evidence. Specifically, the ALJ states that plaintiff concealed his alcohol consumption from medical providers, did not require the use of an assistive device to walk despite "allegations of radiating pain into his buttocks and legs," and "admitted" to a consultative examiner that he was not taking any pain medication at the time of his visit, which the ALJ viewed as "quite inconsistent with one reporting such debilitating pain." (R. 24). A review of the record reveals these assumptions are not based in fact.

The ALJ specifically claimed that plaintiff failed to report drinking "around five to six beers each night" to Deborah Brantley, CNS, at Robert Clark Behavioral Health. (R. 25, 388-89). Plaintiff saw Ms. Brantley on March 2, 2011. (R. 389). Ms. Brantley's notes indicate that plaintiff told her of his past drug use and said that he had been clean for nine years. Id. There is no indication that plaintiff told Ms. Brantley he had never drank alcohol or that Ms. Brantley asked. Id. In fact, plaintiff readily admitted during his hearing before the ALJ that he drank heavily approximately nine years prior to the November 2011 hearing. He told the ALJ that he previously drank beer and whiskey. (R. 42). The ALJ asked "when was the last time you had a whiskey or a beer?" Id. Plaintiff responded he last had "a drink" in April 2011 and that he stopped drinking over a concern with mixing alcohol and Morphine. Id. Further questioning revealed that plaintiff "could probably drink five or six" beers a night when he did drink beer, and that the last time he drank "five or six" beers a night was "about nine years ago." (R. 42-43). Plaintiff also stated that the last time he drank five to six beers a night was when he worked "on the farm." Plaintiff worked at a fish farm in 2000, eleven years before the ALJ hearing. (R. 177). Thus, plaintiff's statement to Brantley that he had been "clean" for nine years may have been a reference to his drug and his alcohol use. In any event, plaintiff's testimony is not inconsistent

with Brantley's notes, and there is nothing in the record that indicates plaintiff was drinking at high levels during, or any time approximate to, his onset date. More importantly, nothing in the record indicates that he tried to hide, or that he lied about, his alcohol use. It was, therefore, improper for the ALJ to make the unsupported assumption that plaintiff improperly hid excessive alcohol consumption from treating physicians. See Huston, 838 F.2d at 1133.

Next, the ALJ stated that plaintiff did not require the use of any type of assistive device to walk despite "allegations of radiating pain into his buttocks and legs." However, the record shows MRI results which revealed "fairly prominent 3-5 mm posterior disc protrusion centered right of midline. This narrows the central canal and the right lateral recess and contacts the cord. The right T12 nerve root is likely compromised which could easily cause right T12 radiculopathy." (R. 225). The ALJ mentioned the MRI (R. 24), but marginalized the stated results, failing to mention the "T12 nerve root" issue. The ALJ's conclusion is not supported by substantial evidence. See Grogan, 399 F.3d at 1261.

Finally, the ALJ faults plaintiff for "admitt[ing]" to a consultative examiner that he was not taking any pain medication at the time of his examination, which the ALJ viewed as "quite inconsistent with one reporting such debilitating pain." (R. 24). At the time of the consultative examination with Robert King, M.D., plaintiff had recently moved, and was searching for a new primary care physician. Plaintiff testified to that fact at the hearing when questioned by the ALJ about his six-month gap in treatment records. (R. 62-65). Plaintiff alerted the Social Security Administration of his move (R. 172), and told them he was searching for an "affordable" primary care physician. (R. 174). Once plaintiff found a new doctor, his pain medications, including Lortab (10/500 strength) and Morphine, were resumed. Plaintiff also resumed prescriptions of a muscle relaxer, blood pressure medication, an anti-inflammatory, and medication to treat bi-polar

disorder and depression. (R. 221). The ALJ's conclusion here is also not supported by substantial evidence. See Grogan, 399 F.3d at 1261. See also Jones v. Colvin, 514 Fed.Appx. 813, 822 (10th Cir. 2013) (unpublished) (holding that the ALJ's credibility analysis must include facts that are "well-supported by the record.").

## CONCLUSION

Based on the foregoing, the Court **REVERSES AND REMANDS** the decision of the Commissioner denying disability benefits to plaintiff. On remand, the ALJ should conduct a proper credibility analysis.

SO ORDERED this 26th day of September, 2014.

_____
T. Lane Wilson
United States Magistrate Judge